U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

AUG 3 0 2012

CLERK, U.S. DISTRICT COURT
By _____
             Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

STACY DAVIDSON, ET AL.,            §
                                   §
          Plaintiffs,              §
                                   §
VS.                                §    NO. 4:11-CV-713-A
                                   §
CITY OF FORT WORTH, ET AL.,        §
                                   §
          Defendants.              §

### MEMORANDUM OPINION
and
### ORDER

Now pending before the court is the motion for summary judgment filed in the above action by defendant City of Fort Worth ("City").[1] Plaintiffs, Stacy Davidson ("Davidson"), Shannan Zillmer ("Zillmer"), and Tanya Russom ("Russom"), filed a response, and City filed a reply. Having now considered all of the parties' filings, the entire summary judgment record, and applicable legal authorities, the court concludes that the motion should be granted.

I.

### Plaintiffs' Claims

Plaintiffs filed their original complaint on October 10, 2011. Plaintiffs alleged that defendant Daniel Lopez ("Lopez"),

_____

[1] Defendant Daniel Lopez pleaded guilty to the sexual assault of each plaintiff and is currently incarcerated.

then a police officer with City, approached each plaintiff on separate occasions, drove each in his police car to a secluded location, and sexually assaulted each plaintiff. Plaintiffs brought claims and causes of action for violation of their civil rights under 42 U.S.C. §§ 1983 and 1985, as well as state law claims for assault and intentional infliction of emotional distress.

II.

## The Motion for Summary Judgment

City contends that summary judgment is warranted on plaintiffs' claims under § 1983 because City has no policy, practice, or custom that caused a deprivation of plaintiffs' federal constitutional rights, and under § 1985 because the complaint fails to allege sufficient facts to state such a claim and because City and Lopez constituted a single legal entity incapable of conspiring with itself. To the extent plaintiffs assert the claims of assault and intentional infliction of emotional distress against City, City claims summary judgment is proper as to those claims because they are intentional torts for which City is protected from liability by the doctrine of sovereign immunity.

III.

Undisputed Facts

The following facts are undisputed in the summary judgment record:

Any individual desiring to become a police officer with City must obtain a peace officer's license in compliance with the standards set forth by the Texas Commission on Law Enforcement Officer Standards and Education ("TCLEOSE"). Minimum licensing standards are established by title 37 of the Texas Administrative Code, section 217.1, and in 2004, when Lopez was commissioned, included requirements that the applicant undergo a criminal background check, a background investigation, an interview with other police officers, and physical and psychiatric examinations.

In addition to the requirements of TCLEOSE, City further requires applicants for police officer to complete a comprehensive questionnaire, which includes questions pertaining to prior wrongful conduct regardless of whether such conduct resulted in an arrest. City conducts a credit check and polygraph examination, and requires applicants to participate in an oral interview with a panel of City police officers. The panel then makes a recommendation to City's Chief of Police regarding the applicant's fitness or suitability for employment as a police officer. If an applicant receives a favorable

3

recommendation and is accepted by the Chief of Police, the applicant may be selected for admission to City's Police Academy. City also requires all officers to complete continuing education and training.

Conduct of City's police officers is governed by the police department's General Orders, which each officer receives upon initial admission to the Police Academy and again when such orders are revised. All officers are trained in application of the General Orders and are required to comply with them. Failure to comply with the General Orders could result in disciplinary action against the officer, including termination of employment. At the time the events giving rise to this action occurred, pertinent portions of the General Orders provided:

> **702.00   Conditions of Employment**
>
> . . .
>
> B.   Officers of the Fort Worth Police Department shall acquire a working knowledge of the General Orders, city ordinances, Texas Code of Criminal Procedure, Texas Penal Code, federal statutes, and current court cases.
> C.   All officers and employees shall comply with the General Orders, special orders, directives, procedures of the department, orders and instructions of supervising officers, federal law, state law, and city ordinances.

App. in Supp. of City's Mot. for Summ. J. ("Def.'s App.") at 18.

Lopez was commissioned as a police officer with City on December 17, 2004. Almost six years later, on November 29, 2010,

Davidson contacted the Internal Affairs Division of City's police department, alleging that a police officer, later determined to be Lopez, had sexually assaulted her after detaining her. Lieutenant Ty Hadsell ("Hadsell") from the police department's Special Investigation Unit called Davidson that same day and left a voice mail message asking Davidson to contact him; however, Davidson did not return Hadsell's call.

On November 30, 2010, Detective Sherry Kelly ("Kelly") contacted Davidson at Hadsell's request and arranged a meeting with her. During the interview with Kelly, Davidson explained how Lopez assaulted her on November 25, 2010, after detaining her for a traffic violation.

Later that day, following the interview with Davidson, an officer from the police department's Internal Affairs Division met with Lopez and gave him a letter placing Lopez on restricted duty. The letter informed Lopez that while on restricted duty he was prohibited from performing any functions of a police officer, wearing a police uniform, identifying himself as a police officer, or carrying his weapon or badge. The letter further instructed Lopez to surrender his service weapon, badge, and identification card to the officer serving him with the letter, which Lopez did. The officer then escorted Lopez to another

room, where Kelly and another officer met with Lopez as part of the criminal investigation into the allegations.

Also on November 30, 2010, City's police department received a report from the Tarrant County Sheriff's Department stating that a woman in its custody had complained that she had been sexually assaulted by a City police officer.  Officers began investigating that report; when they identified Lopez as the officer, they expanded the investigation to include other females with whom Lopez had come into contact.  Investigators eventually met with other victims, including the plaintiffs here.

On December 7, 2010, while the administrative and criminal investigations were ongoing, Lopez resigned from the police department.  On December 8, 2010, Lopez was arrested and ultimately charged with five counts of sexual assault.  Lopez eventually pleaded guilty to sexually assaulting the plaintiffs.

IV.

## Applicable Summary Judgment Principles

Rule 56(a) of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment on a claim or defense if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986).  The movant bears the initial burden of pointing out to

6

the court that there is no genuine dispute as to any material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 325 (1986). The movant can discharge this burden by pointing out the absence of evidence supporting one or more essential elements of the nonmoving party's claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Id.</u> at 323.

Once the movant has carried its burden under Rule 56(a), the nonmoving party must identify evidence in the record that creates a genuine dispute as to each of the challenged elements of its case. <u>Id.</u> at 324. <u>See also</u> Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). If the evidence identified could not lead a rational trier of fact to find in favor of the nonmoving party as to each essential element of the nonmoving party's case, there is no genuine dispute for trial and summary judgment is appropriate. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 597 (1986).

V.

Analysis

A.   42 U.S.C. § 1983

1.   Plaintiffs' Claims

In their complaint plaintiffs contend that City is liable under § 1983 because it allowed Lopez to continue serving as a police officer even after it knew or should have known of his behaviors that posed an extreme risk of harm to citizens and visitors of City, thus promulgating policies and practices that put at risk the civil rights of individuals who came into contact with Lopez.  Plaintiffs also claim City failed to properly train and supervise Lopez, and that City "enforced and promulgated policies that were the driving force of violation of" plaintiffs' federally protected rights.  Pls.' Orig. Compl. at 6.

In their response plaintiffs maintain that City is liable because: City's vetting process was deficient as applied to Lopez; City's policy for ensuring quality control was poor and/or not followed; and, City's policies allowed Lopez to commit the rapes.

2.   Municipal Liability Under 42 U.S.C. § 1983

It is well-settled that a city cannot be held liable for the acts of its employees solely on a theory of respondeat superior. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).  To

8

establish municipal liability under § 1983, a plaintiff bears the burden to prove three elements: "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001) (citing Monell, 436 U.S. at 694). A plaintiff may establish a municipality's liability under § 1983 for a failure to adequately hire, train, or supervise its employees only where such failure "amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989); see also Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 410-11 (1997).

The requirement to prove a municipality's deliberate indifference is not an easy task. Rather, "'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Brown, 520 U.S. at 410. To establish deliberate indifference requires plaintiffs to show that the municipality was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and that it actually drew such an inference. Estate of Davis ex rel. McCully v. City of N. Richmond Hills, 406 F.3d 375, 381 (5th Cir. 2005).

Further, deliberate indifference generally requires plaintiffs to show "at least a pattern of similar incidents." Id. at 383.

3.   Application of Law to Plaintiffs' Claims[2]

Plaintiffs first contend that City's vetting process was deficient as applied to Lopez.   It is undisputed that City requires all applicants for its police force to complete a lengthy application process, undergo background and criminal investigations, and comply with all TCLEOSE standards.   Despite these requirements, plaintiffs claim that City failed to follow through on investigating potential problems that surfaced in Lopez's application file.

Plaintiffs point to the failure of any background investigation evaluations to even mention two key disclosures by Lopez:   first, an incident involving an "[a]ltercation with shipmate" that occurred while Lopez was serving in the Navy, App. in Supp. of Pls.' Opp'n to City's Mot. for Summ. J. ("Pls.' App.") at 17, and second, Lopez's suspension while employed as a correctional officer by the Texas Department of Criminal Justice ("TDCJ").   Plaintiffs also fault investigators' failure to acknowledge Lopez's confession of driving while intoxicated and

---

[2]It is not entirely clear if plaintiffs intended to persist in their claim of municipal liability for failure to train.  Although the complaint mentions a failure to train, and City's brief discusses a failure-to-train claim at length, none of the arguments raised in plaintiffs' response includes or addresses such a claim. Nevertheless, the court concludes that if plaintiffs intended to maintain a claim of failure to train, summary judgment is warranted on that claim, generally for the reasons set forth in City's brief in support of its motion for summary judgment.

10

being in the presence of illegal drug use prior to becoming a police officer.  And, plaintiffs note that only two of seven requests for employment references were returned.  Plaintiffs argue that the sum of all these missteps in the hiring process is that Lopez was unfit for employment as a police officer, and City's so-called screening process was nothing but a rubber-stamp approval that allowed the employment of an obviously unqualified applicant.

In confronting inadequate-screening-of-applicant claims such as those raised by plaintiffs, the Supreme Court has explained the required standard:

> A plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision.  Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute "deliberate indifference."

Brown, 520 U.S. at 411 (quotation marks in original).  The court must "carefully test the link" between the municipality's faulty decision and the particular injury alleged.  Id.

The Fifth Circuit applied Brown to a case alleging a city's chief of police was deliberately indifferent to female plaintiffs' constitutional rights when he hired a police officer

11

who later harassed and assaulted them.  <u>Gros v. City of Grand Prairie</u>, 209 F.3d 431 (5th Cir. 2000).  The plaintiffs pointed to a number of negative incidents and statements from the officer's pre-employment personnel file that they claimed should have alerted the chief to the officer's propensity to violate their constitutional rights.  <u>Id.</u> at 434.  The court noted that plaintiffs were required to show

> a strong connection between the background of the particular applicant and the specific violation alleged. . . . Accordingly, plaintiffs cannot succeed in defeating summary judgment merely because there was a probability that a poorly-screened officer would violate their protected rights; instead, they must show that the hired officer was highly likely to inflict the particular type of injury suffered by them.

<u>Id.</u> (citing <u>Brown</u>, 520 U.S. at 412).  Although the officer's pre-employment file contained a number of negative items, nothing therein showed that he had ever sexually assaulted, sexually harassed, or committed acts against others similar to those alleged by the plaintiffs.  <u>Id.</u> at 435.  The court found insufficient evidence to establish deliberate indifference.  <u>Id.</u> at 436.

The Fifth Circuit reached a similar conclusion in <u>Hardeman v. Kerr Cnty., Tex.</u>, 244 F. App'x 593 (5th Cir. 2007).[3]  In <u>Hardeman</u>, the county hired a jailer despite the fact that he

---

[3]The court recognizes that unpublished decisions of the Fifth Circuit are not precedent.  Nevertheless, the court finds instructive the court's analysis and conclusions in <u>Hardeman v. Kerr Cnty., Tex.</u>, 244 F. App'x 593 (5th Cir. 2007).

failed to sign his application form, the county failed to obtain
complete references, and it overlooked evidence in his file that
he was fired from a school district for making improper advances
towards female students. Id. at *594. The jailer later raped a
female inmate. Id. The court affirmed summary judgment for the
county on the issue of municipal liability under § 1983, holding
that there was no evidence that a "plainly obvious consequence"
of hiring the jailer was that he would eventually rape an inmate.
Id. at *596.

The same situation is presented here. None of City's
alleged oversights of information in Lopez's background show the
requisite "strong connection" between Lopez's background and the
sexual assaults of plaintiffs. For example, the "Captain's Mast"
incident in the Navy was an unspecified "altercation with
shipmate." Pls.' App. at 17. Nothing about the Captain's Mast
indicates it involved any sexual assault. Moreover, the evidence
shows that Lopez was honorably discharged from his military
service. Likewise, the incident for which Lopez was given three
months' probation at TDCJ was for a policy violation--
specifically, leaving a control area while an inmate was still in
the area. Again, nothing about that incident shows a "strong
connection" to Lopez's later sexual assaults. No matter how
closely the police investigators scrutinized these incidents,

13

nothing about them would have indicated that the "obvious consequence" of hiring Lopez would be a violation of plaintiffs' constitutional rights.

Nor is the requisite "strong connection" found in City's failure to obtain completed reference letters from each of Lopez's past employers or to address Lopez's confessions of bad behavior by driving under the influence and being in the possession of illegal drugs. Again, nothing about those incidents would suggest that the "plainly obvious consequence" of hiring Lopez would be the eventual violation of anyone's constitutional rights. <u>Brown</u>, 520 U.S. at 412. Perhaps City could have more thoroughly screened Lopez's application; perhaps City was even negligent in overlooking the items identified by plaintiffs, as plaintiffs have alleged. However, "[a] showing of simple or even heightened negligence will not suffice" to impose municipal liability. <u>Id.</u> at 407. The court has "tested the link" between the alleged failures in City's hiring process and the sexual assaults committed against plaintiffs, and has found it wanting. Plaintiffs have failed to establish that City was deliberately indifferent to the consequences of hiring Lopez.

Plaintiffs fare no better on their claims that City failed to ensure quality control within the police department and that City's policies allowed Lopez to commit the rapes against

14

plaintiffs and others without detection.  As with plaintiffs'
claims that City improperly screened and hired Lopez, plaintiffs
must prove a causal link between the purported failure to
supervise Lopez and the alleged violation of their rights, and
that such failure constituted deliberate indifference to
plaintiffs' constitutional rights.  Goodman v. Harris Cnty., 571
F.3d 388, 395-96 (5th Cir. 2009).  Stated differently, plaintiffs
must show that the "highly predictable consequences" of the
alleged failure to supervise Lopez was that he would violate
plaintiffs' constitutional rights by committing sexual assaults.
Peterson v. City of Fort Worth, Tex., 588 F.3d 838, 850 (5th Cir.
2009).

Plaintiffs have adduced no summary judgment evidence to show
that any policy of City was the "moving force" behind the
violation of plaintiffs' constitutional rights; in other words,
they have established no causal link between the ways they
contend City failed to supervise Lopez and the constitutional
violations.  Although plaintiffs complain that Lopez assaulted
women for five months before City investigated, and claim that
had City followed its policies and procedures Lopez's acts could
have been prevented, these allegations amount to no more than
conclusory assertions and fail to show that Lopez's acts were a
"highly predictable consequence" of the alleged failures to

supervise.  The evidence shows that City commenced its

investigation of Lopez, and relieved him of duty, the same day it

received the complaint from Davidson.  Such acts would appear to

the court to be the opposite of deliberate indifference:

immediately upon learning of Davidson's allegations, City took

steps to relieve Lopez of duty and conducted a significant

investigation of other potential victims.  The court concludes

that plaintiffs have failed to establish an issue of material

fact as to whether City was deliberately indifferent in its

supervision of Lopez, nor have plaintiffs established that any

policy of City was the "moving force" behind the deprivation of

their constitutional rights.

B.    Claims Under 42 U.S.C. § 1985

     Plaintiffs do not specify under which provision of § 1985

they bring their claims.  Section 1985 concerns conspiracy to

interfere with civil rights, although section 1985(3) would seem

to be most applicable.  See 42 U.S.C.§ 1985(3) ("Depriving

persons of rights or privileges").  Regardless of which section

plaintiffs had in mind, conspiracy is an "essential element of

such a cause of action."  United States ex rel. Simmons v.

Zibilich, 542 F.2d 259, 261 (5th Cir. 1976).  Plaintiffs have

neither alleged, nor pleaded any facts, nor adduced summary

judgment evidence, of any conspiracy as would support a claim

under § 1985.  Nor did plaintiffs address this claim in their response to City's summary judgment motion.  Accordingly, summary judgment is warranted on the claims under § 1985.

C.   <u>City Is Immune To Plaintiffs' State Law Claims</u>

The complaint does not make clear against which defendant plaintiffs intended to assert claims of assault and intentional infliction of emotional distress.  City argues that to the extent plaintiffs intended to assert such claims against City, they are barred by the doctrine of sovereign immunity.  Plaintiffs offered no response to this argument.  Because City is so clearly immune from these claims, the court will not devote significant time or analysis to their dismissal.

Under the doctrine of sovereign immunity, a governmental entity cannot be held liable for the actions of its employees unless a constitutional or statutory provision waives the city's sovereign immunity in clear and unambiguous language.  <u>See</u> <u>Univ. of Tex. Med. Branch v. York</u>, 871 S.W.2d 175, 177 (Tex. 1994); <u>Duhart v. State</u>, 610 S.W.2d 740, 742 (Tex. 1980).  The Texas Tort Claims Act provides such a waiver in certain circumstances.  Tex. Civ. Prac. & Rem. Code § 101.025; <u>York</u>, 871 S.W.2d at 177.

The Act does not waive immunity with respect to claims "arising out of assault, battery, false imprisonment, or any other intentional tort."  Tex. Civ. Prac. & Rem. Code §

101.057(2); see Goodman, 571 F.3d at 394.  Plaintiffs' claims of assault and intentional infliction of emotional distress are unquestionably intentional torts for which City's immunity has not been waived.  Tex. Civ. Prac. & Rem. Code  § 101.057(2); Nueces Cnty. v. Ferguson, 97 S.W.3d 205, 223 (Tex. App.--Corpus Christi 2002, no pet.) ("[S]overeign immunity is not waived for a claim of intentional infliction of emotional distress.").

VI.

Order

Therefore,

The court ORDERS that City's motion for summary judgment be, and is hereby, granted, and that all claims and causes of action brought by plaintiffs, Davidson, Zillmer, and Russom, against defendant City, be, and are hereby, dismissed with prejudice.

SIGNED August 30, 2012.

JOHN McBRYDE
United States District Judge